UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

AMIR SHAEIGAN, Plaintiff,

v. Civil Action No. 3:12-cv-762-DJH-CHL

H.D. SUPPLY, INC. and NAJDAT HAYDAR, Defendants.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Amir Shaeigan alleges that his former employer, H.D. Supply, Inc., and former boss, Najdat Haydar, violated civil-rights laws in connection with his firing. (Docket No. 1) The Court previously granted summary judgment for the defendants on Shaeigan's claims of sexual harassment, hostile work environment, and outrage but found that a genuine dispute of material fact remained as to his gender-discrimination and retaliation claims. (D.N. 44) In conjunction with that decision, Haydar was dismissed from the action. (*See id.*, PageID # 441)

Both sides now effectively seek reconsideration of the Court's ruling. In its "renewed motion for summary judgment," H.D. Supply argues that the Court should have dismissed Shaeigan's remaining claims; it again seeks summary judgment on those claims. (D.N. 46) Meanwhile, Shaeigan asserts that his retaliation claim applied to both defendants and that Haydar thus was dismissed in error. (D.N. 49) Because the Court erred in dismissing Haydar as a defendant, Shaeigan's motion will be granted. However, H.D. Supply has not shown that the Court erred in denying summary judgment with respect to the claims of gender discrimination and retaliation, and its motion will therefore be denied.

## I.      BACKGROUND

For purposes of the present motions, a brief recitation of the facts will suffice.[1]  Shaeigan worked for H.D. Supply as a sourcing director, reporting to Haydar, H.D. Supply's vice president of sourcing.  (D.N. 42-6, PageID # 307)  Shaeigan and Haydar went on a business trip to India and Dubai in late January 2012.  While they were in Dubai, Haydar repeatedly attempted to persuade Shaeigan to join him in soliciting prostitutes.  (D.N. 42-8, PageID # 327-29)  When Shaeigan refused, Haydar became angry and ridiculed him, saying that Shaeigan was "weak" and "not a man," "didn't know what [he] was doing with women," and "was not the man that [Haydar] had thought [he] was."  (*Id.*, PageID # 329)

Upon their return to the United States, Haydar "became increasingly critical, aggressive[,] and confrontational," setting unattainable deadlines for Shaeigan's projects and subjecting him to "one-on-one closed[-]door meetings" on short notice.  (*Id.*)  Shaeigan confronted Haydar about his change in attitude and was told that Haydar "was not happy with the Dubai trip and that [Shaeigan] had wasted [Haydar's] time" during that trip.  (*Id.*, PageID # 329-30)  In early April 2012, Shaeigan requested a meeting with Human Resources Vice President Robert Joseph "to discuss [his] problem with [Haydar]"; the meeting was to occur within the next couple of weeks.  (*Id.*, PageID # 330)  In an effort to prevent Haydar from learning the true reason for the meeting, Shaeigan told Joseph that he wanted to discuss his career path.  (D.N. 40-2, PageID # 139; *see* D.N. 45-1, PageID # 465)  Ten days later, before the meeting could occur, Shaeigan was informed by Haydar and HR employee Cindy Chesko that he was being fired for "performance issues."  (D.N. 42-8, PageID # 330; *see* D.N. 40-2, PageID # 140)

---

[1] A more thorough discussion of the factual background was provided in the Court's March 15, 2016 Memorandum Opinion and Order.  (D.N. 44)  As before, the Court views the facts in the light most favorable to Shaeigan.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

2

## II.     ANALYSIS

Of Shaeigan's original claims, only two survived summary judgment: gender discrimination and retaliation, both asserted under the Kentucky Civil Rights Act. (*See* D.N. 44, PageID # 441)  Largely recycling its previous arguments, H.D. Supply again seeks summary judgment on these claims. (D.N. 46)  Shaeigan does not challenge the Court's grant of summary judgment but maintains that his retaliation claim should remain pending against Haydar. (D.N. 49)  The Court construes each motion as a motion to reconsider its March 15, 2016 ruling.

The Federal Rules of Civil Procedure do not provide for motions to reconsider. *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). However, "[d]istrict courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Id.* (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)); *see* Fed. R. Civ. P. 54(b) (allowing revision of interlocutory orders "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities").  Reconsideration is justified to address "an intervening change of controlling law," newly discovered evidence, or "a need to correct a clear error or prevent manifest injustice." *Id.* (citing *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998)).  Here, both parties rely on the latter justification, albeit belatedly. (*See* D.N. 50, PageID # 1059-60; D.N. 52, PageID # 1068-69)

### A.     Shaeigan's Motion

Shaeigan asserts that the Court's dismissal of Haydar was erroneous, and the Court agrees.  In its March 2016 Memorandum Opinion and Order, the Court found that because Shaeigan had established a prima facie case of retaliation and the defendants had "failed to produce sufficient evidence of a legitimate, nondiscriminatory reason for Shaeigan's firing,"

3

summary judgment was inappropriate. (D.N. 44, PageID # 440) Although Shaeigan alleged retaliation by both H.D. Supply and Haydar (D.N. 1, PageID # 4 ¶ 29) and the Court's analysis of the retaliation claim referred to both defendants (D.N. 44, PageID # 438-40), the Court nevertheless ordered that Haydar be dismissed from the action.[2] (*Id.*, PageID # 441)

In response to Shaeigan's motion to reconsider, H.D. Supply first argues that the motion is procedurally improper. Notwithstanding Shaeigan's citation of Rule 54(b) (*see* D.N. 49, PageID # 1048), H.D. Supply contends that the motion should be treated as a motion to alter, amend, or vacate under Rule 59(e) (as its caption suggests) and denied as untimely or otherwise improper. (D.N. 51, PageID # 1062-63) The Court finds this argument to be disingenuous, particularly in light of H.D. Supply's creative captioning of its own motion to reconsider. Shaeigan's motion adequately conveys the relief he seeks and the basis for that request.

The remainder of H.D. Supply's response offers little of substance. As in its original motion for summary judgment, H.D. Supply ignores the relevant complaint, arguing that Shaeigan did not oppose unlawful conduct within the meaning of the KCRA by telling Haydar in Dubai that he was not interested in prostitutes. (*See* D.N. 51, PageID # 1064-65; D.N. 40-1, PageID # 117-18) The Court has already concluded that the protected activity underlying Shaeigan's retaliation claim occurred when he confronted Haydar about the negative treatment he received *after* the Dubai trip. (*See* D.N. 44, PageID # 439) Because the Court's analysis of the retaliation claim applies equally to H.D. Supply and Haydar, Haydar should not have been dismissed, and reconsideration is warranted to correct this clear error. *See Rodriguez*, 89 F. App'x at 959. Haydar will be reinstated as a defendant.

---

[2] The parties' briefing on the summary judgment motion likewise treated Shaeigan's retaliation claim as applying to Haydar as well as H.D. Supply; indeed, Shaeigan described Haydar as "the primary actor in the retaliation." (D.N. 42, PageID # 268; *see* D.N. 49-1, PageID # 103)

### B.     H.D. Supply's Motion

H.D. Supply's "renewed motion for summary judgment" is merely a request for reconsideration of the Court's March 15 opinion.  The basis for the motion is H.D. Supply's contention that the Court's ruling "was based on evidence not contained in the record and/or a misapplication of the applicable law."  (D.N. 46-1, PageID # 706)  But H.D. Supply has not shown that the Court's decision was erroneous.

#### 1.     Gender-Stereotype Discrimination

The Court previously concluded that a genuine issue of material fact existed as to Shaeigan's gender-stereotyping claim, finding sufficient evidence to support Shaeigan's theory that he was subjected to discrimination because Haydar believed he did not fit the stereotype of "strong, aggressive masculinity tied to promiscuity."  (D.N. 44, PageID # 434)  As before, H.D. Supply asserts that no stereotype of male promiscuity exists.  (*See* D.N. 46-1, PageID # 707-08; D.N. 40-1, PageID # 114)  Instead, it conjures a list of supposedly "common sense" male stereotypes, including preference for beer over fruity cocktails, enthusiasm for football, and use of "locker room talk."  (D.N. 46-1, PageID # 708)  This contrived and nonsensical argument is not persuasive.

Nor is the Court persuaded by H.D. Supply's attempt to narrow the stereotype in question.  H.D. Supply asserts that because Shaeigan was married at the time of the Dubai trip, he "would not only have to establish that promiscuity is stereotypically male behavior but that *infidelity* is as well," and further, "that promiscuity or infidelity *through the solicitation of prostitutes* is stereotypically male behavior."  (D.N. 46-1, PageID # 709)  However, H.D. Supply does not offer any evidence that Shaeigan's marital status was mentioned during the trip.  And Haydar did not belittle Shaeigan specifically for his refusal to solicit prostitutes; rather, Haydar

5

told Shaeigan that he was "weak" and "not a man" and "didn't know what [he] was doing with women," among other insults.  (D.N. 42-8, PageID # 329)  Haydar's comments reflect the stereotype that men are (or should be) willing to engage in sex whenever the opportunity is presented.  Its counsel's purported ignorance of this stereotype notwithstanding, H.D. Supply has failed to demonstrate clear error in the Court's decision.  *Cf. Rachuna v. Best Fitness Corp.*, No. 1:13-cv-365, 2014 U.S. Dist. LEXIS 61674 (W.D. Pa. May 5, 2014) (allowing discrimination claim to proceed on gender-stereotyping theory where plaintiff alleged that defendant "had an expectation that, because [plaintiff] was male, he would fit the same 'male' gender stereotype of being sexually loose, promiscuous and predatory").

The Court likewise rejects H.D. Supply's position that the Court's ruling was flawed in its use of the term "aggressive."  (*See* D.N. 46-1, PageID # 709-12)  Regardless of whether that term was ever used by the defendants in reference to Shaeigan, Haydar's statements demonstrate that he viewed Shaeigan as having displayed a lack of aggression in Dubai.  (*See, e.g.*, D.N. 42-8, PageID # 329 (Haydar "told [Shaeigan] that [he] was weak" and "not a man"))  And Shaeigan points to evidence that at the time of his employment, H.D. Supply—and Haydar in particular—preferred a "really aggressive approach with suppliers."  (D.N. 42-12, PageID # 349-50; *see* D.N. 42, PageID # 253)  Thus, Haydar's conclusion that Shaeigan was "weak" and "not a man" could have affected his perception of Shaeigan's ability to do his job: in Haydar's view, Shaeigan no longer fit the profile of a hard-charging business executive.  *Cf. Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 763 (6th Cir. 2006) (rejecting gender-stereotyping claim because "the gender non-conforming behavior which [the plaintiff] claims supports his theory of sex stereotyping is not behavior observed at work or affecting his job performance").

6

### 2. Retaliation

With respect to Shaeigan's retaliation claim, H.D. Supply argues for the first time that Shaeigan cannot demonstrate the requisite causal connection between his protected conduct and his termination. (D.N. 46-1, PageID # 713-14; *see* D.N. 40-1, PageID # 117-18) The Court previously dealt with the causal-connection element in a perfunctory manner because neither party addressed it in briefing. (*See* D.N. 44, PageID # 439) Nevertheless, the Court finds no clear error in its conclusion that this element is satisfied. Whether or not Haydar knew that Shaeigan planned to complain to Joseph about Haydar's behavior in Dubai, the evidence shows that Haydar's negative treatment of Shaeigan continued following Shaeigan's complaint to Haydar, culminating in Shaeigan's termination. (*See, e.g.*, D.N. 40-2, PageID # 137 (after the trip, Haydar "became increasingly insistent on the schedule being pulled up beyond where it could have been pulled up")) While the date of Shaeigan's complaint to Haydar is not clear from the record, less than three months elapsed between their return from Dubai and Shaeigan's firing. (*See* D.N. 42-8, PageID # 327, 330) Thus, the protected activity (Shaeigan's complaint) was close in time to the adverse employment action.

Temporal proximity, particularly in conjunction with evidence of pretext, can establish causal connection. *Philbrick v. Holder*, 583 F. App'x 478, 490 (6th Cir. 2014) (citing *Cantrell v. Nissan N. Am. Inc.*, 145 F. App'x 99, 107 n.2 (6th Cir. 2005)) (noting that "the court may also consider evidence of pretext to buttress th[e causal-connection] element of the prima facie case" and concluding that genuine issue of material fact existed as to causal connection based on combined evidence of temporal proximity and pretext). The lack of evidence from before the Dubai trip concerning Shaeigan's supposedly poor job performance suggests that the stated reason for his firing was pretextual. (*See* D.N. 42-15; D.N. 42-17) Combined with the temporal

7

proximity between Shaeigan's complaint and his termination, this showing of pretext satisfies the causal-connection element and precludes summary judgment on his retaliation claim. *See Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008) (citing *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 862 (6th Cir. 1997)).

### III. CONCLUSION

The Court erred in directing that Haydar be dismissed as a defendant. It did not err, however, in denying summary judgment as to Shaeigan's claims of gender discrimination and retaliation. Accordingly, it is hereby

**ORDERED** as follows:

(1) Defendant H.D. Supply's Renewed Motion for Summary Judgment on Outstanding Claims (D.N. 46) is **DENIED**.

(2) Plaintiff Amir Shaeigan's Motion to Alter, Amend, or Partially Vacate the Court's Order of March 15, 2016 (D.N. 49) is **GRANTED**. Shaeigan's retaliation claim remains pending against both defendants. The Clerk of Court is **DIRECTED** to reinstate Najdat Haydar as a defendant in this matter. The final paragraphs of the Court's March 15, 2016 Memorandum Opinion and Order (D.N. 44) are **AMENDED** to read as follows:

> (1) Defendants' Motion for Summary Judgment (D.N. 40) is **DENIED** as to Plaintiff's gender-discrimination claim against Defendant H.D. Supply, Inc. (D.N. 1, PageID # 4 ¶ 28) and his retaliation claim against H.D. Supply and Defendant Najdat Haydar (*id.* ¶ 29).
>
> (2) Defendants' Motion for Summary Judgment (D.N. 40) is **GRANTED** as to Plaintiff's quid pro quo sexual harassment (D.N. 1, PageID # 4), hostile work environment (*id.* ¶ 27), and outrage claims (*id.* ¶ 31) against Defendant H.D. Supply, Inc. and his outrage claim against Defendant Najdat Haydar.

(3) This matter is **REFERRED** to Magistrate Judge Colin H. Lindsay for a status conference, to be held within thirty (30) days of the date of entry of this Memorandum Opinion and Order.

October 31, 2016

**David J. Hale, Judge**
**United States District Court**